Caitlin Boland Aarab
BOLAND AARAB PLLP
11 5th St. N, #207
Great Falls, Montana 59401
Tel: 406-315-3737

Michael A. Josephson
(*Pro Hac Vice* forthcoming)
Lindsay R. Itkin
(*Pro Hac Vice* forthcoming)
JOSEPHSON DUNLAP, LLP
11 Greenway Plz., Suite 3050
Houston, Texas 77046
Tel: 713-352-100
Fax: 713-352-3300

Richard J. (Rex) Burch
(*Pro Hac Vice* forthcoming)
BRUCKNER BURCH PLLC
8 Greenway Plz., Ste 1500
Houston, Texas 77046
Tel: 713-877-8788
Fax: 713-877-8065

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CHRISTOPHER LEE, Individually and For Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>FOUNDATION ENERGY MANAGEMENT, LLC<br><br>    Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.    Christopher Lee (Lee) brings this lawsuit to recover unpaid overtime wages and other damages from Foundation Energy Management, LLC (Foundation) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.    Lee worked for Foundation as a Production Consultant from approximately February 2017 to July 2019.

3.      Lee and the other Production Consultants who worked for Foundation in the last three years regularly worked more than 40 hours a week.

4.      But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA, Foundation classified Lee and its other Production Consultants as independent contractors and paid these workers a flat amount for each day worked (a day-rate) without overtime compensation.

6.      Neither Lee, nor any other Production Consultants who worked for Foundation and received a day-rate, received a guaranteed salary.

7.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper under 28 U.S.C. § 1391(b).

10.     Foundation conducts substantial business operations in this District and Division.

11.     Lee worked for Foundation in this District and Division.

12.     Lee resides in this District and Division.

**PARTIES**

13.     Lee worked for Foundation as a Production Consultant from approximately February 2017 until July 2019.

14.     Throughout his employment with Foundation, Lee was classified as an independent contractor and paid a fractional day-rate with no overtime compensation. For example, the maximum day-rate Lee was eligible to receive while working on location was $750 per day and he was paid a fractional day-rate as follows:

| Hours Worked | Percentage of Day-Rate Received |
|---|---|
| 1 – 3 | 25% (or $187.50/day) |
| 4 – 6 | 50% (or $375.00/day) |
| 7 – 9 | 75% (or $562.50/day) |
| 10 – 12 | 100% (or $750.00/day) |
| 12+ | Unpaid |

15.     Lee's relationship with Foundation was an employer/employee relationship.

16.     Lee's written consent is attached as Exhibit A.

17.     Lee brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Foundation's fractional day-rate system.

18.     Although these workers regularly worked more than 40 hours each week, Foundation paid these workers a flat amount for each day worked and with no overtime

compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

19.    The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All oilfield personnel employed by, or working on behalf of, Foundation Energy Management, LLC who were classified as independent contractors and paid a fractional day-rate with no overtime at any time during the past three (3) years** (the Putative Class Members).

20.    The Putative Class Members are easily ascertainable from Foundation's business and personnel records.

21.    Foundation is a Texas limited liability corporation and may be served by serving its registered agent for service of process, **C T Corporation System, 3011 American Way, Missoula, Montana, 59808**, or wherever it may be found.

### COVERAGE UNDER THE FLSA

22.    At all relevant times, Foundation has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

23.    At all relevant times, Foundation has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

24.    At all relevant times, Foundation has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Foundation has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

25.     In each of the last three years, Foundation has had annual gross volume of sales made or business done of at least $1,000,000.

26.     At all relevant times, Lee and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

27.     Foundation treated Lee and the Putative Class Members as employees and uniformly dictated the pay practices applied to Lee and the Putative Class Members.

28.     Foundation's misclassification of Lee and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

29.     Foundation's uniform fractional day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

30.     Foundation is a manager and operator of onshore oil and gas producing properties throughout the United States, including in Montana.

31.     To provide these services, Foundation hires oilfield personnel (like Lee) to work on its behalf, including as Production Consultants.

32.     Foundation classifies many of these workers (including Lee and the Putative Class Members) as independent contractors.

33.     But Foundation does not hire these workers on a project-by-project basis.

34.     Rather, Foundation hires and treats these workers just like regular, even if sometimes short-term, employees.

35.     During the relevant period, these workers regularly worked for Foundation in excess of 40 hours a week.

36.     During the relevant period, these workers worked for Foundation on a fractional day-rate basis.

37.     During the relevant period, these workers were not paid overtime for the hours they worked for Foundation in excess of 40 hours each week.

38.     These workers make up the proposed Putative Class.

39.     While exact job titles and job duties may differ, Foundation subjected these workers to the same or similar illegal pay practices for similar work.

40.     For example, Lee worked for Foundation as a Production Consultant from approximately February 2017 to July 2019 in Montana and North Dakota.

41.     Foundation management-level employees (including its Vice President of Operations Rick Payne and Head of Completions Reggie Schmidt) interviewed Lee for the Production Consultant position directly.

42.     After Foundation hired Lee, Foundation required Lee to utilize a third-party staffing company as a payroll conduit for his work with Foundation.

43.     Throughout his employment with Foundation, Lee regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Foundation

paid Lee (either directly or through a third-party) a fractional day-rate for each day worked, regardless of how many hours he worked in a day or week.

44.     As a Production Consultant, Lee regularly worked more than 12 hours each day, often for weeks at a time.

45.     As a Production Consultant, Lee's primary job duties included providing workover services on pump jacks located inside wells, helping to ensure oil production, helping with and coordinating repairs with other workover personnel, and reporting his daily activities to Foundation personnel (including to his direct supervisor, Josh Rayburn, Foundation's Superintendent of Operations for the Northern Region).

46.     Lee did not have any supervisory duties.

47.     Lee did not hire or fire employees.

48.     Lee did not exercise discretion and judgment as to matters of significance.

49.     To the contrary, Lee's work was governed entirely by Foundation.

50.     The Putative Class Members performed the same general job duties performed by Lee.

51.     The Putative Class Members worked the same or similar schedule worked by Lee, regularly working more than 40 hours each week. Lee's work schedule is typical of the Putative Class Members.

52.     During the relevant period, Foundation classified Lee and the Putative Class Members as independent contractors and paid them a fractional day-rate basis with no overtime compensation.

53.     Lee and the Putative Class Members never received a salary.

54.     If Lee and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455.

55.     Lee and the Putative Class Members received a fractional day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

56.     Without the job performed by Lee and the Putative Class Members, Foundation would not be able to complete its business objectives.

57.     Lee and the Putative Class Members were economically dependent on Foundation and relied on Foundation for work and compensation.

58.     Foundation determined the amount and type of compensation paid to Lee and the Putative Class Members.

59.     Foundation set Lee and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Foundation.

60.     Lee and the Putative Class Members worked in accordance with the schedule set by Foundation.

61.     Foundation prohibited Lee and the Putative Class Members from subcontracting out the work they are assigned by Foundation.

62.     Lee and the Putative Class Members must follow Foundation's policies and procedures.

63.     Lee and the Putative Class Members' work must adhere to the quality standards put in place by Foundation.

64.     Lee and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Foundation and/or its clients provided Lee and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

65.     Lee and the Putative Class Members do not provide the significant equipment and programs they work with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

66.     Foundation and/or its clients made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Lee and the Putative Class Members work.

67.     Lee and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

68.     Lee and the Putative Class Members did not market their services while employed by Foundation.

69.     While employed by Foundation, Lee and the Putative Class Members worked exclusively for Foundation.

70.     Foundation set Lee and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Foundation.

71.     At all relevant times, Foundation maintained control, oversight, and direction of Lee and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

72.     Foundation controls Lee's and the Putative Class Members' pay.

73.     Likewise, Foundation controls Lee and the Putative Class Members' work.

74.     Lee and the Putative Class Members' work must adhere to the quality standards put in place by Foundation.

75.     Lee and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

76.     Foundation knows Lee and the Putative Class Members regularly work for 12 or more hours a day, for as many as 7 days a week.

77.     Foundation's records reflect the fact that Lee and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

78.     Lee and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Lee and the Putative Class Members are paid on a fractional day-rate basis. For example, the maximum day-rate Lee was eligible

to receive while working on location was $750 per day and he was paid a fractional day-rate as follows:

| Hours Worked | Percentage of Day-Rate Received |
|---|---|
| 1 – 3 | 25% (or $187.50/day) |
| 4 – 6 | 50% (or $375.00/day) |
| 7 – 9 | 75% (or $562.50/day) |
| 10 – 12 | 100% (or $750.00/day) |
| 12+ | Unpaid |

79. Foundation sets these workers' schedules and compensation; supervises them; requires them to adhere to strict guidelines, directives, and Foundation's policies and procedures.

80. The work Lee and the Putative Class Members perform is an essential part of Foundation's core businesses.

81. Foundation controls Lee and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they work and the rates and method in which they are paid.

82. Foundation controls all the significant or meaningful aspects of the job duties Lee and the Putative Class Members performed by requiring them to strictly adhere to Foundation directives, policies, and procedures.

83. Foundation exercises control over the hours and locations Lee and the Putative Class Members work, the tools and equipment they use, the data they analyze, and the rates of pay they receive.

84.   Even though Lee and the Putative Class Members may work away from Foundation's offices without the constant presence of Foundation supervisors, Foundation still controls significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

85.   Very little skill, training, or initiative is required of Lee and the Putative Class Members to perform their job duties.

86.   Indeed, the daily and weekly activities of Lee and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by Foundation and/or its clients.

87.   Virtually every job function is predetermined by Foundation, including the tools and equipment used, the data to compile, the schedule of work, and related work duties.

88.   Foundation prohibits Lee and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Lee and the Putative Class Members to follow Foundation's policies, procedures, and directives.

89.   Lee and the Putative Class Members perform routine job duties largely dictated by Foundation.

90.   All of the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

91.     All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

92.     All of the Putative Class Members work in excess of 40 hours each week and often work more than 84 hours in a workweek.

93.     Foundation uniformly denies Lee and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

94.     Lee and the Putative Class Members are not employed on a salary basis.

95.     Lee and the Putative Class Members do not, and have never, received guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they receive is the fractional day-rate they are assigned for all hours worked in a single day or week).

96.     Foundation's fractional day-rate policy violates the FLSA because it deprives Lee and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

97.     Foundation knew Lee and the Putative Class Members worked more than 40 hours in a week.

98.     Foundation knew, or showed reckless disregard for whether, the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

99.     Foundation knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA's overtime provisions.

- 13 -

100.    Nonetheless, Lee and the Putative Class Members were not paid overtime.

101.    Foundation knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

102.    Lee brings this claim as a collective action under the FLSA.

103.    The Putative Class Members were victimized by Foundation's pattern, practice, and/or policy which is in willful violation of the FLSA.

104.    Other Putative Class Members worked with Lee and indicated they were classified and paid in the same manner (as independent contractors paid a fractional day-rate with no overtime) and performed similar work.

105.    Based on his experiences with Foundation, Lee is aware that Foundation's illegal practices were imposed on the Putative Class Members.

106.    The Putative Class Members are similarly situated in all relevant respects.

107.    The Putative Class Members are blue-collar workers.

108.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

109.    The illegal fractional day-rate policy that Foundation imposes on Lee is likewise imposed on all Putative Class Members.

110.    Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

111.    The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

112.    The overtime owed to Lee and the Putative Class Members will be calculated using the same records and using the same formula.

113.    Lee's experiences are therefore typical of the experiences of the Putative Class Members.

114.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

115.    Lee has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

116.    Like each Putative Class Member, Lee has an interest in obtaining the unpaid overtime wages owed under federal law.

117.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

118.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Foundation will reap the unjust benefits of violating the FLSA.

119.    Further, even if some of the Putative Class Members could afford individual litigation against Foundation, it would be unduly burdensome to the judicial system.

120.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

121.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

122.    Among the common questions of law and fact are:

    a.  Whether Foundation employed the Putative Class Members within the meaning of the FLSA;

    b.  Whether Foundation's decision to pay a fractional day-rate with no overtime compensation to these workers was made in good faith;

    c.  Whether Foundation's violation of the FLSA was willful; and

    d.  Whether Foundation's illegal pay practice applied to the Putative Class Members.

123.    Lee and the Putative Class Members sustained damages arising out of Foundation's illegal and uniform employment policy.

124.    Lee knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

125.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Foundation's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

126.    Foundation is liable under the FLSA for failing to pay overtime to Lee and the Putative Class Members.

127.   Consistent with Foundation's illegal fractional day-rate policy, Lee and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

128.   As part of their regular business practices, Foundation intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Lee and the Putative Class Members.

129.   Foundation's illegal fractional day-rate policy deprived Lee and the Putative Class Members of the premium overtime wages they are owed under federal law.

130.   Foundation is aware, or should have been aware, that the FLSA required it to pay Lee and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

131.   There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

132.   This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

133.   Those similarly situated employees are known to Foundation, are readily identifiable, and can be located through Foundation's records.

- 17 -

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

134.   Lee realleges and incorporates by reference all allegations in preceding paragraphs.

135.   Lee brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

136.   Foundation violated, and is violating, the FLSA by failing to pay Lee and the Putative Class Members overtime.

137.   Foundation misclassified Lee and Putative Class Members for purposes of the FLSA overtime requirements.

138.   Lee and the Putative Class Members were Foundation's employees for purposes of the FLSA overtime requirements.

139.   Foundation was Lee and the Putative Class Members' employer under the FLSA. Foundation suffered or permitted Lee and the Putative Class Members to work for or on its behalf during the relevant period.

140.   Foundation cannot meet its burden to demonstrate Lee and Putative Class Members are exempt from overtime under the administrative exemption.

141.   Foundation cannot meet its burden to demonstrate the Lee and Putative Class Members are exempt from overtime under the executive exemption.

142.   Foundation cannot meet its burden to demonstrate Lee and Putative Class Members are exempt from overtime under the professional exemption.

143.    Foundation cannot meet its burden to demonstrate Lee and Putative Class Members are exempt from overtime under the highly compensated exemption.

144.    Foundation misclassified Lee and the Putative Class Members as independent contractors.

145.    Foundation failed to guarantee Lee and the Putative Class Members a salary.

146.    Foundation failed to pay Lee and the Putative Class Members overtime.

147.    Foundation paid Lee and the Putative Class Members a day-rate.

148.    Foundation knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Lee and the Putative Class Members overtime compensation.

149.    Foundation's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

150.    Accordingly, Lee and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

### JURY DEMAND

151.    Lee demands a trial by jury.

### PRAYER

WHEREFORE, Lee, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

a.  An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b.  A judgment against Foundation awarding Lee and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.  Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d.  An order awarding attorneys' fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Caitlin Boland Aarab
  Caitlin Boland Aarab
  BOLAND AARAB PLLC
  Attorney for Plaintiffs

OF COUNSEL:
**Michael A. Josephson**
Texas Bar No. 308410
**Lindsay R. Itkin**
Texas Bar No. 24068647
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
litkin@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com